W. Martin Jones, *Executor*, etc., v. Benjamin M. Davies.

### No. 11128.

1. Partnership—*Existence Presumed from Facts.* Where several parties unite in the purchase of real estate, not as a permanent investment but as a speculation, and with a view of selling the same for profit, and there is community of ownership of the property, community of power in carrying on the enterprise, and community of interest in the profits and losses arising from the same, it will ordinarily be treated as a partnership.

2. ———— *Not Within Statute of Frauds.* In such a case the land will be regarded in equity as personal property, and the partnership agreement between the partners, although not in writing, will not be within the statute of frauds.

3. ———— *May Exist for a Single Undertaking.* To constitute a partnership it is not necessary that there be a series of transactions between the parties, nor that the relation be continued for a long period of time. It may exist for a single transaction or undertaking.

4. ———— *Title to Land Immaterial.* It is not material in such cases in whose name the purchase of the real estate is made or the title taken, as the property, whether standing in the name of a partner or of a trustee, will be deemed to be partnership property.

5. ———— *Assignee of Partner is Liable for Purchase-money.* The defendant bought the share of one of the partners, and, knowing the character of the transaction, and that a part of the purchase-money remained unpaid, contributed regularly for a period of five years with the other partners to a fund for the payment of interest on the unpaid purchase-money, and also for the payment of the taxes and other incidental expenses, and during that time shared with the other partners in a fund derived from a sale of the land. *Held,* that he made himself liable as a partner for the payment of the purchase-money remaining unpaid.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed March 11, 1899. Reversed.

*Troutman & Stone,* for plaintiff in error.

*A. Bergen,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : In this action the plaintiff sought to charge Benjamin M. Davies as a partner and to recover an alleged partnership liability of $9507. It appears that on November 15, 1886, W. E. Swift, F. E. Holliday, A. P. Bowman, Joseph Freeman and A. B. Quinton purchased from Jacob Skillman for speculation and profit four lots in the city of Topeka for the sum of $14,000, making a cash payment of $3000, leaving $11,000 to be paid in four instalments of $2750 each. No partnership articles or written contract were made between the purchasers, but it was agreed that Swift and Holliday each held a one-fourth interest, and that each of the remaining parties held a one-sixth interest. On this basis each of the parties contributed his share to the cash payment of $3000, and the understanding between them was that on all other and further payments of purchase-price, interest, taxes and other incidental expenses each of the parties was to contribute according to his respective interest, and that all profits that might be realized from a sale of the lots or any part of them should be divided among them according to the respective interest of each. For convenience it was mutually agreed that a deed from Skillman should be taken in the name of one of the partners, W. E. Swift, and that Swift and his wife should execute a mortgage on the property to secure the deferred payments.

It was understood that any of the parties could sell or transfer his interest in the adventure without consulting the others, and upon the transfer of an interest it was the practice of W. E. Swift to give a statement or certificate that such interest had been transferred.  On December 28, 1887, Davies purchased the interest of Quinton, and at the time of the purchase Swift gave Davies a certificate to the effect that Davies was the owner of a one-sixth interest in the lots, describing them, and that they were taken subject to a like proportion of the $11,000 incumbrance on them.  After that time the other parties recognized Davies as the owner of the Quinton share, and he contributed from time to time his *pro rata* share of the taxes levied against the property, and also his share of the interest accruing upon the unpaid purchase-money which was secured by the Swift mortgage.  Quinton purchased the share of Freeman and was thereby continued as a party in the venture. After Davies purchased an interest in the enterprise a sale of the lots was made for $24,000, and a cash payment of $3000 was then made, but the purchaser failing to pay the balance of the purchase-price his rights under the contract were forfeited.  The cash payment of $3000 was received by Swift and Holliday, who acted for all the parties in collecting and disbursing the funds in connection with this enterprise, and after paying certain expenses the balance of the $3000 was divided among the parties, and Davies accepted and appropriated his share of that fund.  An offer of $18,000 for the lots was made, but this offer the parties interested refused.

The parties continued to pay the taxes and other expenses incidental to the enterprise up to and including the year 1892, but afterward default was

made in the payment of the interest and purchase-money, and an action of foreclosure was begun against W. E. Swift and wife. On motion of Swift, his associates, Holliday, Bowman, Quinton, and Davies, were brought in as defendants, Swift alleging that they were all partners in the enterprise, and that each was liable as a partner for the unpaid purchase-money for which the action was brought. Personal service was obtained on Holliday and Quinton, and a judgment against them for the full amount of the purchase-money was rendered, but Davies and Bowman, being non-residents, were only served by publication, and hence no personal judgment was rendered against either of them. Under the foreclosure this property was sold for $2000 and credited upon the judgment rendered in that case, and in September, 1895, Swift and Holliday paid to the plaintiff the sum of $5000, and were thereby released from any further liability on the judgment rendered in that case. It does not appear that the parties interested in the original purchase of the lots in question ever at any other time purchased or held any other property than these lots. Upon the facts the trial court held that the enterprise did not constitute a partnership, that the parties in interest owned the lots as tenants in common, and that there was no liability on the defendant Davies.

The material facts in the case are not in dispute, and the question is presented here whether the joint adventure of these parties amounted to a partnership, and whether the defendant is liable as a partner. These questions are answered by the facts, and not much, if any, argument is required to show that all of the essential elements of a partnership were present in this business undertaking. The property was purchased for speculation and profit, and the pur-

chasers who associated themselves together as a unit were the joint owners of the same.   No one of them owned any particular part of the lots exclusive of the others, but each had an interest in the whole in common with all the others.   Although only engaged in the single business undertaking, the property was not purchased as a permanent investment or for improvement, but the enterprise was formed and carried on to buy and sell real estate for profit.   As to this enterprise the parties were united as an entity ; together they owned property which was the *substratum* of their business relation ; and the agreement was that they were to divide the expenses and share the profits to be derived from trading in this property.   The mere fact that the title was taken in the name of one of the parties, who executed a mortgage for the unpaid purchase-money, cannot change the relationship of the parties or the ownership of the property, as he was no more than a trustee holding the title for the convenience and benefit of all interested parties.

It is true that there were no articles of partnership nor written contract defining the interests, rights and obligations of the parties, but they are not essential to the existence of a partnership.   In a somewhat similar case, where two joined in the purchase of a tract of land with a view of selling the same for profit, it was held to be a partnership transaction, and the court said : " In such cases real property may usually be considered in nearly the same manner as personal property, and the real intention of the parties with reference thereto, their contracts, promises, or mutual understandings, will govern, without reference to whether they have been reduced to writing or not." (*Tenney v. Simpson*, 37 Kan. 363, 15 Pac. 187.)

In that case the court adopted the view that where

parties join together and purchase land for the purpose of sale and profits only, and not for permanent use, it will be regarded in equity as personal property, and that in such cases the statute of frauds has no application. It is there held that in such cases it is immaterial in whose name the purchase is made or the title taken; that the property, wherever the legal title may be placed, will be deemed partnership property, and the parties entitled to the rights and subject to the liabilities of partners. It is not necessary that there should be a series of transactions nor that the relationship between the parties should continue a long time to constitute a partnership. It may exist for a single venture or undertaking. If there be a joint purchase with a view to a joint sale on joint account and a communion of profit and loss, it will ordinarily constitute a partnership transaction. (*Stettauer v. Carney & Stevens*, 20 Kan. 474; *Tenney v. Simpson*, supra; *Tenney v. Simpson*, 37 Kan. 579, 15 Pac. 512; *Simpson v. Tenney*, 41 id. 561, 21 Pac. 634; *Yeoman v. Lasley*, 40 Ohio St. 190; *Hulett v. Fairbanks*, id. 233; *Kayser v. Maugham*, 8 Colo. 232, 6 Pac. 803; *Morse v. Richmond*, 97 Ill. 303; Lindley, Part. 49.)

Nor is the fact that these parties did not call themselves a partnership a controlling one in determining their relations to each other and to third persons. Their understanding and their conduct, as stated and found by the court, when measured by the ordinary tests of partnership, clearly indicate that the original parties to the transaction occupied the relation of partners. There was a community of ownership of the property, community of power in the management of the business, and community of interest in the profits and losses arising from the undertaking. When taxes were to be paid or interest became due, or

other incidental expenses of the undertaking were to be met, a fund was collected by one of the partners from all, and all shared in the fund arising from the sale of the property, and when the motion was made to bring them into the foreclosure proceeding and charge them as partners, those upon whom personal service was had appeared but did not combat the averment and claim that it was a partnership transaction.

It is strongly urged, however, that even if the original parties are deemed to be partners, Davies cannot be regarded nor held liable as a partner. The claim is that if he is an incoming partner there is no such assumption of the indebtedness of the partnership as will make him liable for the same. We are unable to see, however, that he occupies any different or better position than the other partners. It is evident that he was substituted for the retiring partner with the consent of the remaining partners, as he was recognized by them as having taken the place of Quinton, whose interest in the adventure he had purchased. He had full knowledge of the transaction, knew the amount for which the real estate was purchased, the amount that had been paid on the same, and the amount that still remained unpaid. By becoming a member of the partnership he made himself liable as a partner, and while it may be said that an incoming partner does not by the mere fact of joining the firm become liable for its prior debts, yet the case in hand is not like the ordinary debt of a general mercantile partnership. Here there was a single partnership transaction, a single contract, and the defendant could not identify himself with the firm and buy into the partnership contract without making himself liable for the obligations of that contract. When he joined the firm he made himself a part of an existing entity.

The transaction was an entirety, and he could not acquire an interest in the property and in the partnership transaction without sharing in the obligation which formed a part of the contract. In other words, he cannot reap the benefits of the transaction and repudiate its burdens.

Very little testimony is sufficient to show that an incoming partner like the defendant makes himself liable for such an indebtedness. (*Cross v. National Bank*, 17 Kan. 337.) For five years Davies contributed to the funds raised for the purpose of paying interest, taxes and other expenses in the same way that the other partners did. He knowingly contributed to the payment of interest during that time on the unpaid purchase-money, and thereby adopted the debt as his own as fully as could have been done. His conduct during this long period of time and the conceded facts in the case leave no opportunity to distinguish him from the other partners or except him from the liabilities chargeable against them.

The judgment of the district court will therefore be reversed, and the cause remanded with direction to enter judgment against defendant for the amount of the indebtedness remaining unpaid.