No. 22,509.

J. B. GOODRICH, *Appellant*, v. LEONARD C. WILSON, *Appellee*.

SYLLABUS BY THE COURT.

1. ORAL CONTRACT — *Jointly to Purchase Property — Title Fraudulently Appropriated by One Party — Title Held in Trust for Copurchaser.* The petition alleged in substance that the plaintiff acquired information that a certain piece of real estate could be purchased at an attractive price, and proposed to the defendant that the two purchase it together, whereupon it was verbally agreed between them that they would purchase it jointly or in partnership, each to pay one-half the cost thereof, and each to share alike in the expenses, profits or losses on account of the purchase; that in betrayal of the confidence and trust reposed in him by the plaintiff, the defendant with intent to cheat and defraud him bought the property himself and refused to recognize any rights of the plaintiff therein. Plaintiff tendered one-half the purchase price and demanded conveyance of a one-half interest. *Held*, a cause of action was stated for the conveyance of a one-half interest, and in default thereof for the decree to stand as a conveyance.

2. SAME—*Statute of Frauds Does Not Apply.* The transaction between the parties did not involve a purchase from either of any real estate or any interest therein, and the statute of frauds does not apply.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed March 6, 1920. Reversed.

*A. H. Skidmore,* and *C. B. Skidmore,* both of Columbus, for the appellant.

*Al. F. Williams, Charles Stephens,* and *Paul MacCaskill,* all of Columbus, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff appeals from an order sustaining a demurrer to his petition. The allegations were in substance that the plaintiff acquired information that a certain piece of real estate could be purchased at an attractive price, and immediately went to work to procure it; that he ascertained who the owner was, examined the premises and improvements thereon and noted that if the buildings were torn down the value of the property would be greatly decreased, and induced the laborers to stop their work, and ascertained the value of

Goodrich v. Wilson.

the place and what it could be bought for; that he found that it could probably be purchased for $700 or less, and on the same day he consulted the defendant in reference to the two purchasing the property and elevator building thereon, the defendant then having no knowledge of the value or condition of the property; that on the same day the parties went to the premises, the plaintiff showing the defendant over them and through the building and pointing out the value of the place and the elevator building thereon, and taking the defendant into his confidence, giving him all the information he had—

"That then and there plaintiff and defendant verbally agreed with each other that if said premises could be purchased for the sum of $700.00 or less, that they, plaintiff and defendant, would purchase the same jointly or in partnership, each paying one-half the cost thereof, and each to share and share alike in expenses, profits or losses occurring on account of said purchase."

It was further alleged that on account of this verbal agreement the plaintiff negotiated with the owner and his agent for the purchase of the property, and employed a competent man to examine the building thereon for the purpose of ascertaining its condition, and spent $1 in money and one and one-half days' time in order to carry out the agreement between himself and defendant; that this examination developed that the property was in good condition and could be bought for $600 cash or less; that on the first day of March, 1919, and in the forenoon, plaintiff confided in defendant all the information he had touching the property; and that—

"Said defendant in the afternoon of said first day of March, 1919, in bad faith, and in betrayal of the confidence and trust imposed in him by the plaintiff with full knowledge of the value of the premises, the owner thereof, and the price same could be obtained for learned from plaintiff in confidence, unlawfully and with intent to cheat and defraud the plaintiff of his interest in his right to an undivided one-half interest in said property, contracted for the purchase of said premises for himself . . . at the contract price of $600.00, and that thereafter on the 5th day of March, 1919, defendant closed said deal and purchase, and obtained in his own name a good and sufficient warranty deed . . . for said premises."

It was also alleged that this deed was filed for record; that the plaintiff on the 17th day of March tendered the defendant $300 and demanded a deed for an undivided one-half interest in the premises, which demand was refused; that the

defendant holds the title in trust for himself and plaintiff, and that the latter was the owner of one half; and that the premises, when purchased by the defendant, were worth more than $1,000. Plaintiff tendered and offered to pay into court $300 and one-half of any additional sum the defendant may have paid for the property, and asked that he be adjudged and decreed the owner of a one-half interest, and that the defendant be ordered to deliver to plaintiff a deed of conveyance, and in default thereof that the decree stand as a conveyance.

This is a very plain statement of a very rank piece of dishonesty. Without any knowledge of the ultimate facts, we say without hesitancy that if these things are true it would be a disgrace to the law to leave the plaintiff helpless and without remedy. Such conduct as is alleged here would not be tolerated among semisavages, and certainly ought not be countenanced by people in the forefront of modern civilization. So much as to the moral aspect of the case.

But the defendant's counsel argue that this alleged fraud cannot be judicially rebuked on account of the statute of frauds. That venerable piece of legislation provides that no action shall be brought whereby to charge a party upon any contract for the sale of lands or any interest in or concerning them unless the agreement upon which such action is brought shall be in writing and signed by the party to be charged therewith, or by some other person thereunto by him or her lawfully authorized in writing. (Gen. Stat. 1915, § 4889.) This is not a contract between these parties for the sale of any land or interest therein, but a contract to enter upon a joint venture to buy some land. In *Robinson v. Smalley,* 102 Kan. 842, 171 Pac. 1155, it was said:

"The statute of frauds applies to the contract between vendor and vendee. This was not a contract by which Smalley agreed to sell anything, or by which his wife agreed to sell anything, or by which the plaintiff agreed to sell anything. The contract was purely one of employment to produce a stated result, and consequently the statute of frauds has no application." (p. 843.)

In *Schmidt v. Beiseker,* 14 N. D. 587, the plaintiff employed the defendant to appear for him at the United States land office and purchase for him a piece of land advertised to be sold under a provision of the United States statutes. He alleged

that they entered into a contract under which the defendant was to purchase the tract and pay for it, the plaintiff to repay him for it as soon as the price was ascertained, and also to pay him for his services; and that the defendant bought in the land and took title to himself, sold to another person, and refused to convey to the plaintiff. Upon the trial it was held that the contract was one relating to the conveyance of real estate and therefore void under the statute of frauds, but on appeal the supreme court held otherwise, and said:

"This contract is one of agency. Because the agency involved a bidding in of real estate in the name of the principal, it did. not become a contract for the sale of real estate as between the plaintiff and defendant. . . . If the land was to be purchased by the defendant in his own name and then conveyed to the plaintiff, a different question would be presented." (p. 590.)

It is also argued that the petition attempts to set up a claim to the real estate as a tenant in common, and not as a partner; that the allegations thereunder were insufficient to show a partnership, and the plaintiff, having paid no part of the purchase price, cannot claim that a trust arose in his favor. As early as *Fisher v. Krutz and Campbell,* 9 Kan. 501, it was held. that—

"An agent undertaking any business for another is disabled in equity from dealing in the matter of the agency upon his own account, or for his own benefit; and if he do so in his own name he will be considered as holding in trust for his principal." (Syl. ¶ 3.)

This is in point only so far as each member of a partnership is agent for the other, and as indicating the moral view of a situation somewhat similar to that now under consideration. In *Tenney v. Simpson,* 37 Kan. 353, 15 Pac. 187, Simpson agreed with the owner to purchase some land and entered into a parol agreement with Tenney and Bolles by which Bolles was to furnish the purchase money for the land, Tenney giving his note therefor. The deed was by consent of the parties made to Bolles as security for the purchase money, and the land was bought by the three on speculation for the purpose of sale and profit only. After a part of the land was sold and the costs and purchase money paid, Tenney and Bolles refused to sell any more of the land or to permit Simpson to have anything further to do therewith. It was decided that Bolles held the

property in trust for the copartnership. In the opinion it was said:

"Besides, the transaction in the present case was a partnership transaction, and in such cases real property may usually be considered in nearly the same manner as personal property, and the real intention of the parties with reference thereto, their contract, promises or mutual understandings will govern, without reference to whether they have been reduced to writing, or not. . . . In such cases the statute of frauds and kindred statutes have no application." (p. 363.)

(See, also, *Bryan v. McNaughton*, 38 Kan. 98, 16 Pac. 57; *Jones v. Davies*, 60 Kan. 309, 56 Pac. 484; *Painter v. Hines*, 86 Kan. 832, 122 Pac. 1036.)

"One who occupies a fiduciary or confidential relation to another in respect to business or property, and who by the use of the knowledge he obtains through that relation, or by the betrayal of the confidence reposed in him under it, acquires a title or interest in the subject-matter of the transaction, antagonistic to that of his correlate, thereby charges his title or interest with a constructive trust for the benefit of the latter, which, as the title or interest so chargeable is not void but is merely voidable, the *cestui que trust* may enforce or renounce at his option. . . . A person is said to stand in a fiduciary relation to another when he has rights and duties which he is bound to exercise for the benefit of that other person. This statement obviously embraces a large variety of relations. The relations of attorney and client, principal and agent, guardian and ward, partners, personal representatives and heirs, beneficiaries or distributees, are familiar illustrations of fiduciary relations." (39 Cyc. 182, 185.)

Some authorities from other states are found in the defendant's brief, more or less out of harmony with the foregoing, but are not sufficiently persuasive or convincing to weaken or impair the decisions we have cited.

The order sustaining the demurrer to the petition is overruled, and the cause is remanded for further proceedings.