No. 33,820

A. M. Ballard and R. J. Wallace, Copartners doing business as Ballard & Wallace, *Appellants,* v. Claude Drilling Company and Claude Wentworth, *Appellees.*

(88 P. 2d 1021)

Opinion filed April 8, 1939.

*Paul H. White, Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellants.

*Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, A. M. Buzzi* and *Paul J. Donaldson,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This was an action to establish and enforce an interest in an oil and gas lease. The trial court sustained a demurrer to plaintiffs' petition, and they have appealed.

The petition, for our purposes, may be summarized as follows: Plaintiffs reside at Tulsa, Okla., maintain an office in Wichita, and deal in oil and gas leases. On and prior to January 8, 1937, they acquired certain geological information concerning oil and gas prospects in the Burrton, Kan., area. About that time they learned the Indian Territory Illuminating Oil Company (hereinafter called the oil company) held an oil and gas lease in the Burrton area, known in this record as the Dick lease, on certain described land in Harvey county near the Reno county line. This lease expired by its terms on June 28, 1937, unless an oil well was commenced on the property before that date, and plaintiffs later ascertained that the owner of the property would not consent to any extension of that time. Plaintiffs took the matter up with the Wichita office of the oil company, and after some delay were advised the oil company would be interested in making a "farm-out" contract of the Dick lease. Thereafter, at considerable expense to themselves, plaintiffs employed the firm of Lerke & Whortan, geologists, of Wichita, to make a geologi-

cal survey, of this area. This was done, and the geologists made a report to plaintiffs, with plats. These showed a "high" in the vicinity of the Dick lease and that it had excellent possibilities of being a producing acreage.

The defendant, the Claude Drilling Company, is a corporation, with its principal office at Tulsa, Okla. As its name implies, its principal business is drilling oil and gas wells. The defendant, Claude Wentworth, is its president. Wentworth and plaintiff Wallace had been acquainted for many years. He repeatedly solicited Wallace for drilling contracts in Kansas if Wallace should find something which he thought of sufficient merit, and in the spring of 1937, through a mutual friend, specifically solicited plaintiffs for a drilling contract in Kansas.

After receiving the report of Lerke & Whortan, geologists, plaintiffs renewed their efforts to make a contract with the oil company to handle the Dick lease. They took this up with the oil company's representative at Wichita, who, after conferences indicating a contract could be made, referred them to the general officers of the oil company at Bartlesville, Okla. By this time it was late in May, 1937. Plaintiffs went to Bartlesville, took the matter up with the officials of the oil company, and agreed upon a contract by the terms of which the Dick lease would be assigned to plaintiffs, who definitely bound themselves to begin drilling a well on the lease before June 28, 1937, the oil company retaining an "overriding-royalty" of 5/64 of all oil and gas produced from the lease. Plaintiffs were to show the oil company they had a binding contract with a responsible drilling company, and the contract itself was to be finally executed by June 4. The form of contract was to be written by the oil company and sent to plaintiffs. This was done promptly and was received by plaintiffs on the last day of May or the first day of June. They promptly took the matter up with defendants, and as early as June 2 they explained to Mr. Wentworth, president of the defendant company, all of the investigations they had made with respect to the geological structure in the Burrton area, and particularly with respect to the Dick lease; submitted to him the report and maps of their specially hired geologists, Lerke & Whortan; all indicating that the Dick lease was a good prospect for the production of oil and gas; gave defendants the information they had as to who owned the lease and on what terms it might be handled, and showed them the contract which had been prepared by the oil company.

Plaintiffs went over this with defendants on two days, perhaps the 2d and 3d of June. Plaintiffs proposed to defendants that if defendants would drill the well and take all the production until it paid for the expense of putting down the first well they would assign to the defendants an undivided one-half interest in the lease, subject to the overriding royalty of the oil company. Mr. Wentworth, for defendants, orally expressed himself as being willing to accept the deal, but advised that he would have to get the consent of an associate interested in his company, a Mr. Cotton, then thought to be at Enid, Okla. Later, and on June 3, Wentworth advised plaintiffs that he was unable to locate Mr. Cotton, at Enid, but had learned that he was somewhere in Texas. Mr. Wentworth advised plaintiffs that he was thoroughly sold on the proposition, and felt sure that Mr. Cotton would agree with him. He urged plaintiffs to get from the oil company an extension of the time for the full acceptance of the contract with the oil company to June 7, by which time he would be able to get in contact with Mr. Cotton, and that he felt sure defendants would accept the contract. At defendants' request plaintiffs did contact the oil company and obtained an extension of time for closing the contract to June 7. On June 7 defendant Wentworth advised plaintiffs that Mr. Cotton had objected because the Dick lease was on land in Harvey county, Kansas; that he had a prejudice against operating in that county, and if it were in any other county they would be glad to accept the proposition. It was alleged that it was then too late for plaintiffs to contact other drillers and they were compelled to give up their contract with the oil company on June 8.

It was further alleged that thereafter, and on or before June 23, defendants went directly to the oil company and made with it a contract substantially on the same terms the oil company had made with plaintiffs, and the defendants did in fact commence a well on the lease before June 28, 1937.

It was further alleged that defendants knew that these plaintiffs had only until June 7 in which to accept or reject the contract with the oil company; that the defendant Wentworth consumed all the time given them by the oil company and the extended time, and during the negotiations with plaintiffs secured all the confidential information from these plaintiffs concerning the geological structure of the Dick lease and the terms on which the contract could be made with the oil company, and never at any time objected to any

of the terms proposed by plaintiffs, but on the contrary advised plaintiffs that the sole reason for not taking the deal was that Mr. Cotton, who was interested in the corporation, was prejudiced against drilling in Harvey county, Kansas. Defendants had told plaintiffs not to worry about the deal, that it was a good one, and that it was certain to be accepted. It was alleged that the defendants, in bad faith and in betrayal of the confidence imposed in them by plaintiffs, and with full knowledge of the value of the premises and of who owned the lease thereon and the terms upon which a farm-out contract could be made, and of the geological structure of the property and the subsurface structure, all of which was learned from plaintiffs in confidence, unlawfully, and with the intent to cheat and defraud plaintiffs of their interest in the lease, contracted with the oil company upon substantially the same terms as the contract which plaintiffs had with the oil company. It was alleged that this was done without the knowledge and approval of plaintiffs and in disregard of the confidence reposed by plaintiffs in defendants, and that defendants did not record their contract with the oil company until after the well on the lease had reached a depth of more than 100 feet. It was alleged that under the facts stated defendants, in equity and in good conscience, were bound to act in good faith with plaintiffs and with due regard to the interests of these plaintiffs, and that in fact they violated such confidence for the wrongful purpose of excluding and defrauding plaintiffs from any interest in the property and for financial gain and advantage to themselves. The prayer is that plaintiffs have judgment and the court decree the defendants are holding title to the property known as the Dick lease in accordance with the terms of the contract they had proposed to defendants, and which orally they had assured plaintiffs they would accept; that is to say, that after defendants are reimbursed by the oil runs of the lease for the expense of drilling the first well that these defendants have an undivided one-half interest in the lease, subject to the overriding-royalty reserved in the oil company.

On a demurrer to the petition, every fact well pleaded in the petition and every reasonable inference therefrom is for the purpose of the demurrer to be construed most favorably to the pleader. This rule of law is thoroughly grounded in this state. (*Ball v. Oil & Gas Co.,* 113 Kan. 763, 766, 216 Pac. 422; *State, ex rel., v. National Bank of Topeka,* 142 Kan. 792, 795, 52 P. 2d 1197; *Jackson v. National Bank of Topeka,* 146 Kan. 424, 71 P. 2d 1057.)

Under the allegations of the petition it is clear plaintiffs have not been fairly dealt with by defendants. Plaintiffs had collected the geological data important to be known by anyone attempting to operate on the Dick lease. A substantial part of that—clearly the most important part of it—had been obtained by plaintiffs at their individual expense. It was not information known generally to the public; it was their private property; they had ascertained who held the lease; the terms on which it might be handled on a farm-out basis; the time within which it had to be handled; all of that was reduced to writing, and as against these defendants this was the property of plaintiffs. All of this was submitted to defendants on a fair dealing basis and following requests on their part for an opportunity to drill on a worth-while lease in Kansas. Defendants gave plaintiffs oral assurances that they would join in the enterprise and that the only delay was the advisability of contacting an associate, and plaintiffs were assured he unquestionably would assent. All of the few days plaintiffs had to complete their deal with the oil company were consumed by defendants in those assurances and requests for delay. The reason given by the associate for not going forward with the transaction was trivial at the best. It was alleged that defendants used the information acquired by plaintiffs, and which belonged to them individually and which had been communicated to defendants in confidence and rejected for a triviality, as a basis for them to take the matter up directly with the oil company and secure a contract substantially like the one plaintiffs had, but eliminating plaintiffs, and for the entire benefit of defendants.

If these allegations are true, as the demurrer concedes them to be, we do not hesitate to hold that the petition states a cause of action for equitable relief. The basis for the holding is that the fraudulent conduct of defendants is of a character to create a constructive trust. (See 65 C. J. 454, et seq.; Restatement, Restitution, §§ 160, 169, 200.) A similar situation was presented in *Goodrich v. Wilson,* 106 Kan. 452, 188 Pac. 225. There plaintiff acquired information that certain land could be purchased at an attractive price, and proposed that defendant purchase it with him. It was orally agreed they would purchase the property jointly, or in partnership, but, with the intent to cheat and defraud plaintiff, defendant bought the property for himself. It was held a constructive trust was created and plaintiff could maintain an action to establish and enforce his interest in the property. We have had a number of cases involving the equitable doc-

trine of constructive trust. Perhaps the following are typical: *Clester v. Clester,* 90 Kan. 638, 135 Pac. 996; *Withroder v. Elmore,* 106 Kan. 448, 188 Pac. 424; *Silvers v. Howard,* 106 Kan. 762, 190 Pac. 1; *Robinson v. Eagle-Picher Lead Co.,* 132 Kan. 860, 297 Pac. 697.

In some of the cases a constructive trust was held to have been created, in others a contrary result was reached. These varying results depended on the facts disclosed in each case; but the general principles as to constructive trusts and how they are created run through all of them. Where there is a fiduciary relation between the parties, as discussed in *Lindholm v. Nelson,* 125 Kan. 223, 232, 264 Pac. 50, or a fiduciary relation, such as one proposing to go into a partnership or joint enterprise, contemplating some form of joint ownership and division of profits, as was contemplated here, fair dealing requires that the parties be frank with each other. In the annotation on this point, 62 A. L. R. 16, it is said (citing many cases):

"Since the fiduciary relationship existing between the parties to a joint adventure demands the utmost good faith in all the dealings of the parties with each other, the acquisition of secret advantages or secret profits is prohibited, not only because of such fiduciary relationship, but because the contract itself contemplates a division of the profits."

Here plaintiffs proposed to defendants the formation of a mining partnership, or at least a joint enterprise, with respect to the acquisition and development of the Dick lease. Previously defendants had solicited plaintiffs for an opportunity to form such a business relation with plaintiffs respecting oil and gas leases in Kansas if and when plaintiffs found one which they thought might be operated profitably. In this case plaintiffs had information respecting this lease which they had spent time and money to obtain. This included the results of the special study plaintiffs had given to the geological structure of the land in and near the Dick lease, the reports and maps of the geologist they had employed, and the terms of the farm-out contract the oil company was willing to make. This was valuable information which belonged to plaintiffs. (*Dodge Co. v. Construction Information Co.,* 183 Mass. 62, 66 N. E. 204.) They were business or trade secrets, recognized in the law as constituting rights against the wrongful use of which the owner will be protected. (*Morrison v. Woodbury,* 105 Kan. 617, 185 Pac. 735.) Under the facts alleged defendants had no right to use these to their advantage and to the detriment of plaintiffs.

Appellees argue the petition failed to allege fraudulent conduct on the part of defendants; that no fiduciary relation existed between the parties, and that no trade secret was involved. We have considered all their counsel have said on those points, and on each of them we have reached a conclusion to the contrary. Another point is argued which needs no attention now. It must be remembered we are reviewing the ruling of the court sustaining a demurrer to the petition, on the ground it does not state facts sufficient to constitute a cause of action. In our judgment, that ruling was erroneous. It is reversed, with directions to overrule the demurrer.