**PULSECARD, INC., Plaintiff,**

v.

**DISCOVER CARD SERVICES, INC., et al., Defendants.**

**No. 94–2304–EEO.**

United States District Court, D. Kansas.

Feb. 14, 1996.

Frederick K. Starrett, Denise E. Farris, Lathrop & Norquist, Overland Park, KS,

Curtis L. Tideman, Lathrop & Norquist, Kansas City, MO, for plaintiff.

Marc E. Elkins, Reggie C. Giffin, Morrison & Hecker, Kansas City, MO, Randall E. Hendricks, Lawrence A. Rouse, Melissa C. Hinton, Rouse, Hendricks, German, May & Shank, Kansas City, MO, Michael W. Lerner, The Law Office of Mick Lerner, P.A., Overland Park, KS, for defendants.

Scuyler M.P. Kurlbaum, Steven H. Mustoe, Kurlbaum, Stoll, Seaman, Reefer, Suter & Mustoe, P.C., Kansas City, MO, for movants United Surgical Funding and Systems, Inc., MedCash, Inc.

Marc E. Elkins, Reggie C. Giffin, Morrison & Hecker, Kansas City, MO, for counterclaimant SPS Payment Systems Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on the following motions:

Plaintiff PulseCard, Inc.'s Motion to Strike Defendant SPS Payment Systems, Inc.'s Motion for Summary Judgment on Plaintiff's Kansas Trade Secret Act Claim (Doc. # 332); and

Defendant SPS Payment Systems, Inc.'s ("SPS") Motion for Partial Summary Judgment on Counts V and VI of the Second Amended Complaint (Doc. # 223).

For the reasons stated below, PulseCard's motion to strike is denied. SPS' motion for summary judgment is denied as to Count V.B. and granted as to Count VI.

I. *Plaintiff PulseCard, Inc.'s Motion to Strike Defendant SPS Payment Systems, Inc.'s Motion for Summary Judgment on Plaintiff's Kansas Trade Secret Act Claim*

PulseCard urges the court to strike SPS' motion for summary judgment on plaintiff's Kansas Trade Secret Act claim. The court will deny PulseCard's motion, for the reasons set forth by SPS in its memorandum in opposition.

## II. Defendant SPS' Motion for Partial Summary Judgment

The court, after examining the briefs and the exhibits, finds that all facts and legal issues have been adequately set forth by the parties, and thus, oral arguments would not materially assist the court in its resolution of the pending motion for summary judgment. Consequently, plaintiff's request for oral argument pursuant to District of Kansas Rule 7.2 is denied.

### A. Factual Background

The material uncontroverted facts established by the parties in accordance with District of Kansas Rule 56.1 are as follows:

PulseCard and SPS entered into a Non–Disclosure Agreement on April 19, 1991. The purpose of the agreement was to preserve confidentiality of certain information exchanged between the parties during discussions concerning, in part, a possible business relationship whereby SPS would provide, in exchange for a fee, electronic credit card transaction processing services for sales involving PulseCard's health care credit card program. SPS was also looking at Pulse-Card for possible alliances, such as a joint venture.

Paragraph 1 of the Non–Disclosure Agreement provides:

> In connection with certain business discussions between SPS and [PulseCard], including but not limited to, the disclosure of information concerning point of sale systems and equipment, transaction formats, and transaction processing specifications, [PulseCard] may have access to and SPS shall disclose to [PulseCard], and SPS may have access to and [PulseCard] shall disclose to SPS such information as is necessary to enable the parties to conduct said discussions and which the disclosing party considers confidential and proprietary ("Confidential Information").

On September 1, 1991, PulseCard and SPS entered into the Network Services Agreement. The Network Services Agreement stated that SPS would provide, in exchange for a fee, electronic credit card transaction processing services for sales involving Pulse-Card's health care credit card program, including PulseCard's private label health care credit card. Article XVI, paragraph 8, of the Network Service Agreement provides:

> Entire Agreement. This Agreement contains the entire agreement of the parties relating to the subject matter hereof and supersedes any prior agreements or representations relating to such subject matter that are not set forth herein. This Agreement may be amended only in writing which has been executed by the parties hereto.

SPS did not at any time enter into a partnership or joint venture with PulseCard. In Article XVI, paragraph 2, the parties expressly state that it was not their intention to enter into a joint venture:

> Independent Contractor. Nothing contained in this Agreement shall be construed as constituting a partnership, joint venture or agency between the parties hereto.

SPS did not, at any time, agree to act primarily for the direct benefit of PulseCard. Larry Myatt, Vice–President of Marketing for SPS, states through affidavit that SPS did not, at any time, intend or seek to establish a fiduciary relationship with PulseCard or assume any fiduciary duties with respect to PulseCard. Myatt further avers through affidavit that PulseCard was an independent business at all times during its business relationship with SPS, and that PulseCard did not, at any time, place SPS in charge of any of PulseCard's property, interests, or assets.

### B. Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing

law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

■ "[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1.

### Count V: Breach of Contract Claim

In Count V of the pre-trial order, Pulse-Card sets forth two claims for breach of contract against SPS. SPS seeks summary judgment on the claim in Count V.B., alleging that SPS breached the Non–Disclosure Agreement entered into between the parties, and advances two theories in support of summary judgment.

First, SPS argues that pursuant to Illinois law,[1] where a written agreement deals with the same subject matter as another contemporary or previous agreement, the subsequent agreement supersedes and dissolves all other agreements. SPS claims that the undisputed facts show that the Network Services Agreement and the Non–Disclosure Agreement both involve the same subject matter, to-wit, preserving the confidentiality of information exchanged relating to the network processing services SPS would provide under the Network Services Agreement. Therefore, SPS argues, the obligations imposed by the Network Services Agreement supersede all confidentiality provisions of the Non–Disclosure Agreement not expressly set forth in the Network Services Agreement, and summary judgment is proper as to PulseCard's claim for breach of contract based on the Non–Disclosure Agreement.

In response, PulseCard maintains that the Non–Disclosure Agreement did not involve the same subject matter as the Network Services Agreement. PulseCard states that the Non–Disclosure Agreement was clearly intended to cover discussion on topics of a much broader scope than just network services, and that its confidentiality provisions

---

1. Both parties agree that Illinois law is applicable to PulseCard's claims concerning breach of the Non–Disclosure Agreement and the Network Services Agreement, because both agreements state they are to be governed by and construed in accordance with Illinois law.

were intended to include discussions involving a possible partnership or joint venture, as well.

■ Viewing the record in the light most favorable to plaintiff, the court concludes that genuine issues of material fact exist which preclude summary judgment. Specifically, questions of fact remain for the jury with respect to whether the Non–Disclosure Agreement and the Network Services Agreement covered the same subject matter, or whether the Non–Disclosure Agreement was designed to encompass subject matter of a wider range than mere network services. Larry Myatt, Vice–President of Marketing for SPS, states that the Non–Disclosure Agreement was entered into *in part* to preserve confidentiality of credit card transactions services.

■ As an alternative ground for summary judgment on Count V.B., SPS claims that PulseCard has failed to present any evidence that SPS misused or misappropriated any information protected by the Non–Disclosure Agreement. The court concludes that, when the record is viewed in the light most favorable to PulseCard, genuine issues of material fact exist sufficient to preclude summary judgment on the issue of whether SPS breached any of the terms of the Non–Disclosure Agreement. The court finds that it will be in a far better position at trial to assess the evidence and, if warranted, grant a motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a). Accordingly, the court will deny summary judgment as to Count V.B. of the pretrial order.

### Count VI: Breach of Fiduciary Duty Claim

SPS urges the court to grant summary judgment on Count VI of the pre-trial order, on the grounds that no fiduciary relationship existed between the parties; thus, because SPS did not owe a fiduciary duty to Pulse-Card, SPS did not breach any such duty.

■ In general, Kansas law recognizes two types of fiduciary relationships: (1) those specifically created by contract such as principal/agent, attorney/client, and trustee ces-

tui que trust, and those created by formal legal proceedings such as guardian and/or conservator/ward, and executor/administrator of an estate, and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions. *Rajala v. Allied Corporation,* 919 F.2d 610, 614 (10th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991) (citing *Denison State Bank v. Madeira,* 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982)). PulseCard maintains that a fiduciary relationship was created under both categories.

With respect to the first category, Pulse-Card contends that a fiduciary relationship was created by contract through the terms of the Non–Disclosure Agreement and the Network Services Agreement. PulseCard articulates its argument in the following manner:

PulseCard placed confidential information and trade secrets in the charge of defendant SPS and ... SPS specifically contracted for the receipt of that information. In the Non–Disclosure Agreement, SPS agreed that it would receive confidential information from PulseCard. Furthermore, SPS agreed in that contract to restrictions involving the use and dissemination of confidential information received from PulseCard.... SPS's acceptance of that confidential information and trade secrets with specific restrictions as to its use and dissemination clearly makes SPS a fiduciary of PulseCard under Kansas law.

An additional fiduciary relationship was created by the Network Services Agreement. In that agreement, PulseCard entrusted SPS with its own valuable asset: its clients. SPS abused this relationship by cutting off services to merchants for improper purposes. The ability of SPS to cut off services to PulseCard's clients and thereby force PulseCard to capitulate to SPS' demand for unauthorized fees demonstrates the superiority of one party over the other that is indicative of a fiduciary relationship. *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235 (1982).

In addition, the Network Services Agreement also contains a confidentiality

provision covering information captured on the network. For the same reasons set forth hereinabove with respect to the Non–Disclosure Agreement, a fiduciary relationship was created for the protection of that confidential information.

PulseCard's Memorandum in Response to SPS' Motion for Summary Judgment, pp. 38–39.

 Under Kansas law, a party seeking to establish the existence of a fiduciary relationship must prove it by clear and convincing evidence. *Rajala,* 919 F.2d at 615. "For the plainest of reasons, agreements establishing fiduciary relationships, if not in writing, must be clear and convincing.... A confidential relationship is never presumed, and the burden of proof is on the party asserting it." *Id.* (citing *Wolf v. Brungardt,* 215 Kan. 272, 284–85, 524 P.2d 726, 736 (1974) (quoting *Paul v. North,* 191 Kan. 163, 170, 380 P.2d 421, 426 (1963))). Moreover, fiduciary obligations should be extended reluctantly to commercial or business transactions. *Pizza Management, Inc. v. Pizza Hut, Inc.,* 737 F.Supp. 1154, 1183 (D.Kan.1990).

SPS contends that, as a matter of law, neither the Non–Disclosure Agreement nor the Network Service Agreement created a fiduciary relationship. First, it notes that PulseCard cites no cases holding that a non-disclosure agreement is sufficient to create a fiduciary relationship. Second, SPS submits that the mere fact two parties sign an agreement to protect against the disclosure of sensitive information does not create a fiduciary relationship. Indeed, SPS argues, the fact that SPS and PulseCard believed it was necessary to enter into a non-disclosure agreement to protect confidential information demonstrates that they understood the nature of their relationship was not one of inherent and mutual trust:

> The very purpose of a non-disclosure agreement is to give contractual protection to parties dealing at arm's length who are contemplating a future contractual agreement. Although almost every fiduciary relationship implies some duty of confidentiality, not every agreement to protect confidential information from disclosure creates a fiduciary relationship. Almost

all businesses have information which they would prefer not be disclosed. Accepting PulseCard's argument would require that a fiduciary relationship be imposed, regardless of the parties' intent, any time two businesses wanted to explore a possible business relationship that involved the exchange of sensitive information and the execution of a non-disclosure agreement.

SPS' Reply to PulseCard's Response, pp. 38–39.

 We agree. The hallmark of a fiduciary relationship is a voluntary and conscious assumption or acceptance of the duties of a fiduciary. *See Denison,* 230 Kan. at 696, 640 P.2d at 1243–44 ("one may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary.") Fiduciary relationships cannot be established inadvertently and cannot be forced upon another party. *Rajala,* 919 F.2d at 614–15; *Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152, 1158 (10th Cir.1994).

 Here, the record is devoid of any evidence, much less clear and convincing evidence, showing that SPS consciously accepted the duties of a fiduciary towards PulseCard. Neither the express language contained within the Non–Disclosure Agreement nor the language in the Network Services Agreement establishes that a fiduciary relationship was created. The mere fact that SPS provided network transaction services to PulseCard's clients pursuant to the Network Services Agreement and then later terminated those services does not create a fiduciary relationship. Simply providing services pursuant to an ordinary, commercial contract does not establish a fiduciary relationship. *See Pizza Management, Inc.,* 737 F.Supp. at 1183 ("In the setting of a commercial contract between two equally sophisticated business entities, this court is not prepared to impose heightened legal duties on one of the parties simply because that party may have more powers and discretion under the express terms of their agreement."); *Denison,* 230 Kan. at 696, 640 P.2d at 1243. We conclude that, based

upon the facts presented, no fiduciary relationship was established by either the Non–Disclosure Agreement or the Network Services Agreement.

The court also finds that, contrary to PulseCard's argument, the mere acceptance of confidential information by SPS does not make SPS a fiduciary of PulseCard under Kansas law. Not one of the three cases relied upon by PulseCard, *Paul v. North*, 191 Kan. 163, 380 P.2d 421 (1963), *Ballard v. Claude Drilling Company*, 149 Kan. 506, 88 P.2d 1021 (1939), and *Goodrich v. Wilson*, 106 Kan. 452, 188 P. 225 (1920), directly supports the proposition that acceptance of confidential information creates a fiduciary relationship.

*Paul v. North* is factually distinguishable and thus not persuasive. There, the court, in holding that no fiduciary obligation was created, specifically excerpted a portion of the record reflecting that the information exchanged between the parties had been disseminated to other prospective buyers, and thus was *not* confidential information.

*Goodrich v. Wilson* is likewise distinguishable on its facts. In *Goodrich*, the court held that a fiduciary relationship existed between the parties, not merely because confidential information had been exchanged, but because the parties had entered into a joint venture. In contrast, as discussed more fully below, no evidence has been presented in the instant case that demonstrates the existence of a joint venture between the parties.

We do not deem *Ballard v. Claude Drilling* persuasive. It is factually and legally distinguishable, inasmuch as *Ballard* involved the imposition of a constructive trust. *See Paul v. North*, 191 Kan. at 169, 380 P.2d at 426.

PulseCard next contends that a fiduciary relationship was created by contract through a joint venture between the parties. PulseCard maintains that a joint venture or partnership was created (1) by SPS' involvement in the credit card program PulseCard was attempting to establish with the Association of General Dentistry ("AGD"), and (2) from an alleged agreement between the parties to jointly engage in market research.

"A joint venture is an association between two or more people to carry out a business activity for profit." *Flight Concepts Ltd. Partnership*, 38 F.3d at 1158 (citing *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 76, 596 P.2d 816, 823 (1979)). The following acts or conduct are indicative of a joint venture, though no single factor is determinative: (1) the joint ownership and control of property; (2) the sharing of expenses; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement. *Modern Air Conditioning, Inc.*, 226 Kan. at 76, 596 P.2d at 816. The burden of proving a joint venture rests upon the party asserting its existence. *Flight Concepts*, 819 F.Supp. 1535, 1547 (D.Kan.1993).

The undisputed material facts demonstrate that there was no joint venture between the parties resulting from SPS' involvement in the AGD credit card program. While there is some evidence in the record to indicate that the parties may have shared expenses related to the AGD marketing program, the fulfillment of one factor alone does not demonstrate that a joint venture was created. The record contains no evidence establishing any of the other five factors enumerated above.

Nor has PulseCard raised a genuine issue of material fact with regard to whether a joint venture was created through the parties' "joint efforts to research the market." The "uncontroverted facts" cited by PulseCard are either not supported by the record, or are insufficient to establish that such a joint venture was created.

On the other hand, Larry Myatt, in his affidavit, states that at no time during SPS' business relationship with PulseCard did SPS ever enter into a partnership, joint venture, or other alliance with PulseCard. Moreover, neither the Non–Disclosure Agreement nor the Network Services Agreement states, or even implies, that the parties had entered into a joint venture. In fact, the Network Services Agreement expressly

states that nothing in the agreement shall be construed as constituting a partnership, joint venture, or agency between the parties.

■ The most that PulseCard can claim is that SPS preliminarily considered a potential alliance with PulseCard. SPS does not dispute this statement. However, PulseCard has not presented any evidence to controvert SPS' assertion that no joint venture was in fact ever created. It is only through the actual creation of a joint venture that a fiduciary relationship arises.

Next, PulseCard contends that a fiduciary relationship can be implied in law from the factual circumstances surrounding the involved transactions and the relationship of the parties, the second category of fiduciary relationship recognized by Kansas law. In *Rajala v. Allied Corporation,* the Tenth Circuit specifically detailed the factors courts should consider in determining whether the second type of fiduciary relationship exists:

> "[The Supreme Court of Kansas] has refused ... to give an exact definition to fiduciary relations." [*Denison,* 230 Kan. at 691, 640 P.2d at 1241] (quoting *Curtis v. Freden,* 224 Kan. 646, 651, 585 P.2d 993, 998 (1978)). Although such fiduciary relationships cannot be defined with precision, the Supreme Court of Kansas has prescribed "certain broad principles which should be considered in making the determination of whether a fiduciary relationship exists in any particular factual situation:
>
> > A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another.* A fiduciary is a person with a duty to *act primarily for the benefit of another.* A fiduciary is in a position to have and exercise, and does *have and exercise influence over another.* A fiduciary relationship implies a condition of *superiority of one of the parties over the other.* Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary."*

*Id.* (emphasis in original).

The court in *Denison* made clear that each of the general considerations listed above need not be present in every case in which a fiduciary relationship is alleged. However, the court emphasized that an overriding consideration in the law of fiduciary relationships was that "one may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Denison,* 230 Kan. at 696, 640 P.2d at 1243–44 (emphasis added). The court went on to state that "[t]his is particularly true when one ... is fully competent and able to protect his own interests." *Id.* [I]n *Paul v. North,* 191 Kan. 163, 380 P.2d 421 (1963), the Supreme Court of Kansas stated that fiduciary relationships

> "may arise out of conduct of the parties evidencing an agreement to engage in a joint enterprise for the mutual benefit of the parties.... But they necessarily spring from an attitude of trust and confidence and *are based upon some form of agreement, either express or implied, from which it can be said that the minds have met in a manner to create mutual obligations."*

*Id.* 191 Kan. at 170, 380 P.2d at 426 (citations omitted) (emphasis added). Although a fiduciary relationship may arise out of an agreement to act together for the mutual benefit of the parties, such a relationship cannot be established by accident or inadvertence.

> "Mere concert of action, without more, does not establish a fiduciary relationship.... Undoubtedly, parties may deal at arm's length for their mutual profit. It is only when, by their concerted action, they *willingly and knowingly act for one another in a manner to impose mutual trust and confidence that a fiduciary relationship arises."*

*Wolf v. Brungardt,* 215 Kan. 272, 285, 524 P.2d 726, 736 (1974) (emphasis added).

[The Tenth Circuit Court of Appeals] has also recognized that conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law. *See Hotmar v. Lowell H. Listrom & Co., Inc.,* 808 F.2d 1384, 1387 n. 3 (10th Cir.1987); *cf.*

36A C.J.S. Fiduciary, 385 (1955) ("As a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship") (footnotes omitted).

*Rajala,* 919 F.2d at 614–615 (emphasis in original).

We find the Tenth Circuit's decision in *Rajala* particularly on point and well-reasoned. There, the plaintiff, a manufacturer of plastic films, sued a chemical company engaged in the production of resin products used in making plastic film. Plaintiff asserted, among other claims, a cause of action for breach of fiduciary duty. The district judge dismissed all of plaintiff's other claims by directed verdict or summary judgment; however, he allowed the claim for breach of fiduciary duty to proceed to trial. The jury returned a verdict in favor of plaintiff on the breach of fiduciary duty claim, whereupon defendant moved for judgment notwithstanding the verdict. The Tenth Circuit, in reversing the district court's denial of defendant's motion for J.N.O.V., concluded that the evidence was insufficient to establish a fiduciary relationship between the parties.

In reaching its decision, the Tenth Circuit emphasized that there was no evidence that the defendant had ever consciously assumed the duties of a fiduciary. *Id.* at 623. The court further noted that although the evidence at trial demonstrated that defendant had intended to act in a manner which would have consequential benefits for plaintiff, nothing in the record suggested that any authorized representative of defendant ever intended to assume fiduciary duties on behalf of plaintiff. *Id.* No evidence demonstrated that defendant was acting "primarily for the benefit of" the plaintiff. *Id.* at 624. In addition, "[t]he parties did place confidence in each other, but once again, that was a confidence based on commercial self-interest in which both parties had the power contractually to protect their own interests however they chose." *Id.* The fact that the parties had entered into a five-year confidentiality agreement was insufficient to establish a fiduciary relationship. *Id.*

We also are persuaded by the Tenth Circuit's reasoning in *Flight Concepts,* 38 F.3d 1152 (10th Cir.1994), where the court affirmed the entry of summary judgment in favor of defendant on a claim for breach of fiduciary duty. There, plaintiff, a corporation, had developed a concept for a new military airplane. Plaintiff granted to defendant, an airplane manufacturer, the exclusive right to produce and sell the new airplane in exchange for royalties. The parties agreed to enter into an exclusive "teaming arrangement" to develop a marketing strategy for the airplane. The parties also entered into a confidentiality agreement to protect their technical data, and a license agreement giving the defendant the exclusive right to manufacture and sell the airplane. When the defendant terminated the license agreement without producing or selling any airplanes, and, instead, designed and manufactured a similar airplane on its own, the plaintiff sued defendant for breach of fiduciary duty, among other things.

The court, in holding that the defendant did not owe plaintiff any fiduciary duty, noted:

> The record contains no evidence that [the defendants] deliberately assumed the responsibilities of fiduciary in their dealings with the [plaintiffs]. Nor do the facts as alleged by plaintiffs show that [defendants] agreed to act for plaintiffs' benefit. We conclude that defendants were not fiduciaries and had no duty to disclose information to plaintiffs by virtue of that relationship.

*Id.* at 1158.

Here, as in *Rajala* and *Flight Concepts,* the record is devoid of any evidence that any authorized agent of SPS consciously or deliberately assumed the responsibilities of a fiduciary in SPS' dealings with Pulse-Card. Nor do the undisputed facts reveal that SPS acted, or agreed to act, for Pulse-Card's direct and primary benefit. Furthermore, there is nothing in the Non–Disclosure Agreement or anywhere else in the record before the court suggesting that PulseCard placed SPS in charge of its business, inter-

ests, or assets. We conclude PulseCard has failed to meet its burden of proving a fiduciary relationship by clear and convincing evidence.

In sum, for the foregoing reasons, the court finds that the undisputed material facts show that there was no fiduciary relationship between the parties under any of the theories advanced by PulseCard. The undisputed material facts show that no fiduciary relationship was created by the Non–Disclosure Agreement or the Network Services Agreement, by SPS' alleged receipt of confidential information from PulseCard, or implied in law from the factual situation. Accordingly, summary judgment is entered in favor of defendant SPS on Count VI.

IT IS THEREFORE ORDERED that the motion of plaintiff to strike defendant SPS Payment Systems, Inc.'s motion for summary judgment on plaintiff's Kansas Trade Secret Act claim (Doc. # 332) is denied; and

IT IS FURTHER ORDERED that the motion of defendant SPS for summary judgment on the portion of the breach of contracts claims set forth in Count V.B. that is based on an alleged violation of the Non–Disclosure Agreement between SPS and PulseCard is denied; and

IT IS FURTHER ORDERED that the motion of defendant SPS for summary judgment on Count VI of plaintiff's Second Amended Complaint is granted.

IT IS FURTHER ORDERED that the request of plaintiff PulseCard, Inc., for oral argument (Doc. # 366) is denied.