**A. T. LITTLE, Appellant,**

v.

**EMPLOYEES SECURITY LIFE INS. COMPANY et al., Appellees.**

No. 15763.

Court of Civil Appeals of Texas.

Dallas.

Jan. 20, 1961.

Rehearing Denied Feb. 17, 1961.

James L. Mitchell, Dallas, for appellant.

Shank, Dedman & Irwin, Ralph B. Shank, Dallas, for appellees.

WILLIAMS, Justice.

This is an appeal from a judgment of the District Court sustaining appellees' motion for summary judgment. A. T. Little, appellant, sued Employees Security Life Insurance Company and its successor, Mercantile Security Life Insurance Company, for damages arising from an alleged breach of an employment contract. Appellant seeks a reversal of the trial court's judgment, complaining in his only point, that the trial court erred in "rendering summary judgment, genuine issues of material facts were raised by the pleadings, the exhibits, and depositions on trial." At the outset appellees complain that this point does not comply with Rule 418, Texas Rules of Civil Procedure, in that it is too general. A similar situation was presented to this court in Wyche v. Noah, 1956, 288 S.W.2d 866, 867, n. r. e., in which the complaint was urged concerning the generality of the point of the trial court "overruling appellant's motion for summary judgment." Chief Justice Dixon of this Court, in overruling the point, pointed out that while the point may be too general this court will discuss the grounds as we understand them upon which appellant apparently relies to support his appeal, as disclosed in the statements and arguments accompanying his points on appeal. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478. We overrule appellees' objection.

It is undisputed in this record that on April 24, 1956 appellant entered into a contract in writing with the Employees Security Life Insurance Company, such contract providing for a salary of $1,000 per month together with a renewal pension of not less than $300 per year, and providing for certain expenses. The contract was for a period of one year and was subject to be renewed from year to year upon the "mutual consent of both parties." Intention not to renew the contract by either party required ninety days written notice. Apparently both parties were satisfied with the performance of this contract in its initial term and, on December 13, 1956 by letter signed by both parties such contract was extended, without change in its terms, for another twelve months period ending April 24, 1958. From this point forward, however, the testimony is in conflict as to the renewal or extension of this contract for an additional period beyond April 24, 1958.

Appellant, by alternative pleading, alleges that in January 1958 he entered into one of three possible contracts or extensions of the original contract: (1) a contract for two years from March 15, 1958 to March 15, 1960; (2) a contract for an additional twelve months from April 24, 1958 to April 24, 1959; and (3) a contract renewed by operation of law for an additional twelve months from and after April 24, 1958. Appellant alleged that appellees breached one of the alleged contracts on or about July 10, 1958, the date when he ceased his services for appellees, by reason of wrongfully discharging him. Appellees answered by (1) general denial, and special defenses of (2) that appellant resigned, (3) that appellant executed a full release, (4) accord and satisfaction, (5) the contract alleged was void and unenforcible because it violated the Statute of Frauds. In the alternative appellees alleged appellant was discharged for cause.

In considering appellees' motion for summary judgment, the trial court had before him the deposition of the appellant Little, together with a number of written exhibits, the depositions of C. R. Sargent, the Vice-President of appellees' insurance company, and the deposition of Durwood Sutton, a Director and member of the Executive Committee of the appellees' insurance company.

■ We agree with appellant that this being an appeal from a summary judgment, this court has but one question to consider, i. e. Are there any material issues of fact raised by the pleadings and evidence before the court? The rule, which has been firmly established by our Supreme Court, is announced as follows:

"In determining the question of whether or not material issues of fact were raised by the evidence, the court must, under the law, first review all the evidence in the light most favorable to the petitioners; disregard the conflicts in the testimony; and indulge, in favor of the petitioners, every intendment reasonably deducible from the evi-

dence." Smith et al. v. Bolin et al., 1954, 153 Tex. 486, 271 S.W.2d 93, 94; Gulbenkian v. Penn, 1952, 151 Tex. 412, 252 S.W.2d 929.

Appellees' contention and argument that the trial court's judgment in sustaining summary judgment is correct necessarily postulates the nonexistence of issuable facts. We have carefully reviewed the record and find ourselves unable to agree with appellees in this regard.

The principal question involved is whether there was a valid contract of employment between appellant and appellees on or about July 10, 1958, which is admittedly the date when appellant ceased his connection with appellees' insurance company. As stated above, the testimony is uncontroverted that there was an original contract and that this contract was renewed for a period ending April 24, 1958. However, from this point onward there is a sharp conflict in the testimony concerning the alleged renewal of the contract for an additional period, either for one year or for two years, as contended by appellant. The original contract provided that it might be extended "by mutual agreement" of the parties. Prior to the expiration date of the extended contract, during the early part of 1958, there is evidence of negotiations and conversations between appellant and the officials of the appellees' insurance company. Appellant, Little, testified in his deposition:

"Q. This (referring to the extension of the original contract) provides for the termination date to be April 24, 1958, does it not? A. That is correct.

"Q. Alright now, when was your contract renewed in 1958, or was it renewed? A. It was renewed sometime around the Christmas holidays, in Mr. Turner's office with consent of Mr. Turner and Mr. Sargent, and possibly Mr. Sutton; I am not sure about the latter.

"Q. Was it written? A. I brought it up, it was in typewritten form, which

proposed several things, in the meantime Mr. Sargent told me that President Turner felt that the company should do something for me for the new year, due to the nice increase business that we had had in 1957, so that at that time I asked President Turner for an increase in salary, and it was agreed that it would be renewed for $1,250 per month for the next year.

"Q. With whom did you have that agreement? A. It was agreed between President Turner and Mr. Sargent and myself, and probably Mr. Sutton."

He then testified concerning a written memorandum which is attached to plaintiff's depositions, which said memorandum set forth various details concerning an extension of the original contract. This memorandum of agreement is signed by appellant A. T. Little and is also signed by Mr. G. H. Turner, President of appellees' company.

This testimony is sharply controverted by the testimony of Durwood Sutton, Director and Member of the Executive Committee of the appellees' company. He testified that to his knowledge, there were no negotiations for a new contract between the parties after 1957. He flatly denied that there was a new contract which would be effective after April 24, 1958.

■ Appellees insist that, as a matter of law, such claimed new contract would be in violation of the Statute of Frauds. As a general rule, parol agreements to extend the time for performance of contracts required by the Statute of Frauds to be in writing are void. However, this rule is modified to the extent that parol extension of the contract required by Statutes to be in writing is valid when made before the date of performance has expired, as in this case. Watkins v. Arnold, Tex.Civ.App., 60 S.W. 2d 476 and Bullis v. Noyes, 75 Tex. 540, 12 S.W. 397. Even so, there is a clear cut issue drawn as to the existence of a memo-

randum in writing signed by both parties which would bring the agreement within the provisions of the Statute of Frauds. While there is some question concerning Mr. Turner's signature it definitely appears thereon, and it is not our province on this appeal to indulge in any speculations or finding on conflicting issues of fact.

■ Appellees next contend that if there was a contract, that appellant Little resigned his position with the company in July 1958, and further contends that this is shown to be a fact by the uncontroverted evidence. With this we are unable to agree. Mr. Sargent testified that Mr. Little resigned orally; that his resignation was accepted; and that such acceptance was conveyed to Little by him on July 10. Mr. Sutton testified that Mr. Little agreed to resign at a meeting of the Board of Directors early in July; that the Board agreed to accept his resignation. However, he admitted that there was no official recordation of this action until a meeting of the Board in September of 1958. Appellant Little testified that when Mr. Sargent came to him and told him that his resignation had been accepted that he was "flabbergasted". It is quite obvious that this testimony raises an issue of fact.

Appellees next contend that appellant's cause was completely released by a written instrument signed by Little, said release being set forth in appellees' pleadings. In this connection Little testified that he went to see Mr. Sutton; that Mr. Sutton pushed some papers out to him across the desk and told him "sign here" and that he did sign them. He said that he did not read the papers, relying on the representations of Sutton that it was merely a form for his bonus payment. He flatly denied that he read the release and contended he did not know its effect. To the contrary Mr. Sutton testified that Mr. Little read the release before signing it. Obviously this creates an issue of fact.

Appellees next lay great stress on the proposition that Mr. Little had written one

or more letters, seeking employment with other insurance companies, in which letters he has stated that he had resigned from appellees' company. Contention is made that these statements contained in the letters effectively bar Mr. Little in his efforts to deny that he had resigned from the company. Again, we are unable to agree with this contention in the light of the complete evidence in this case. Little did admit that he had written one or more letters, seeking employment, in which he had stated that he "had resigned" from appellees' company. On the other hand he had also written one or more letters stating that he had been discharged by appellees' company. Quoting from his testimony:

"Q. Did you ever apply for any job since July 10th or July 11th, 1958, in which you told them that you had resigned, instead of being discharged? A. Yes.

"Q. Did you tell anyone other than the Western Fidelity Insurance Company that you had been discharged, when you applied for job? A. Yes, sir.

"Q. Who did you tell? A. I told each one of them when I knew the President personally, like I knew Mr. Gardner, which would be approximately half of them for example.

"Q. Then you told some of them that you had resigned, and others that you had been discharged? A. That is correct."

We are not able to agree with appellees that this testimony of Little is so clear and convincing as to constitute a binding admission on him concerning his alleged resignation with the company. It is obvious from his testimony that he does not make a clear and positive statement. He makes conflicting statements which may or may not be explainable in the light of his effort to obtain employment with other companies. Be that as it may, the testimony presents such conflict that it should be decided by a trier of facts.

■ Appellees next assert that the contract sued upon was for a period of in excess of one year and therefore against public policy of the State. Since 1951, it has permitted corporations, through its board of directors, to enter into contracts of employment for such period of time as they wish if such is not prohibited by the Charter and By-Laws of the Corporation. Art. 1327, Vernon's Annotated Civil Statutes art. 2.02, of the Texas Business Corporation Act, subd. A(12), V.A.T.S. specifically provides for the election or appointment of officers and agents of corporations for such period of time as the corporation may determine. This contention is overruled.

■ Finally, appellees urge that the contract sued upon is not enforcible and void in that it violated art. 3.02 of the Insurance Code, V.A.T.S., and also art. 3.68 of the Insurance Code, therefore against public policy. Art. 3.12 provides that no domestic corporation shall pay any salary or compensation to any officer of the corporation amounting in any one year to more than $10,000 unless such is first authorized by vote of the Board of Directors or by a committee of such Board. Art. 3.68 provides that no insurance company shall pay its officers compensation or commission contingent upon the renewal premium. We overrule appellees' contention in both of these regards. The record raises issues of fact concerning the approval of the salary of appellant by the Board of Directors or Executive Committee. It also raises an issue of fact as to the exact nature of the compensation paid.

Considering the record as a whole, we sustain appellant's point of appeal and overrule appellees' counterpoints. There being ample evidence of issuable facts to be determined by trier of fact, the trial court erred in sustaining the motion for summary judgment.

The judgment of the trial court is reversed and remanded for trial on the merits.