G. C. MURPHY COMPANY et al., Appellants,

v.

Sam LACK, Appellee.

No. 208.

Court of Civil Appeals of Texas.

Corpus Christi.

June 9, 1966.

Rehearing Denied June 29, 1966.

Hill, King & McKeithan, by Neal King, Mission, for appellants.

Carter, Stiernberg, Skaggs & Koppel, by Rollins M. Koppel, Harlingen, for appellee.

## OPINION

NYE, Justice.

This was a suit brought by the landlord (appellee) to forfeit a lease on a store building for the alleged violation by the tenants (appellants) of a certain covenant in the lease. The landlord, hereafter referred to as plaintiff, non-suited his plea for money damages and the trial court granted plaintiff's motion for summary judgment, forfeiting the lease and awarding plaintiff possession. (The trial court postponed actual possession pending appeal). From this summary judgment the tenants, hereafter called defendants, perfected their appeal.

The lease in question was for a term beginning April 1, 1959, and ending March 31, 1969. It provided for a rental equal to $14,400.00 per year or three percent (3%) of the gross sales, whichever was more. The defendants had paid the rental based on the three percent (3%) of gross sales which amounted to at least $4,500.00 more than the agreed minimum rental since 1961. One of the defendants, Terry Farris Stores, Inc., became a wholly owned subsidiary of the other defendant G. C. Murphy Company in 1961 and thereafter the plaintiff dealt with Murphy as if it were the lessee. The plaintiff's ground for forfeiture of the lease is based upon a certain covenant which specified that the defendants should spend at least three percent (3%) per annum of its gross sales for "advertising purposes". This covenant reads as follows:

"V.

"Lessee agrees that it will spend a minimum of three percent (3%) of its gross sales annually for *advertising purposes in order to promote the business of Lessee*

which is to be operated in the leased premises. *In this connection, Lessor specifically gives to Lessee the right and privilege of placing and erecting and painting signs on the exterior of the leased building for the purposes of advertising."* (emphasis supplied)

The forfeiture provision is contained in Paragraph XII of the lease, and is very similar to the one set forth in Rohrt v. Kelley Manufacturing Co., 162 Tex. 534, 349 S.W.2d 95 (Supreme Court 1961). The relevant portion of it reads as follows:

"In the event of default in any of the covenants herein, Lessor may enforce the performance of the lease in any method provided by law or this lease may be forfeited at Lessor's discretion *if such default continues for a period of thirty (30) days after Lessor notifies Lessee of such default and his intention to declare the lease forfeited,* such notice to be sent by the Lessor in writing to the demised premises, and thereupon *(unless the Lessee shall have completely removed or cured said default)* this lease shall cease and come to an end as if that were the day originally fixed herein for the expiration of the term hereof, and Lessor's agents or attorneys shall have the right (of re-entry) * * *." (emphasis supplied)

On March 6, 1964, plaintiff wrote defendants claiming violation of the advertising covenant for the years 1961, 1962 and 1963 and declaring the lease forfeited on March 31, 1964, twenty four days after the notice. Defendants denied that there was any violation of this covenant, whereupon, plaintiff brought this suit on March 26, 1964, claiming violations for these three preceding years. Plaintiff has dropped his claim for the 1961 violation but still contends that the defendants violated the advertising covenant for the years 1962 and 1963. For the purpose of the computation of rental based on sales the year begins February 1 and ends January 31.

Defendants-Appellants' first and second points complain that the trial court erred in granting the summary judgment because amounts spent for "advertising purposes" as used in the lease are not limited to amounts paid for radio, television, newspaper and circulars, but also include all advertising expenditures and that these expenditures exceeded the stipulated amount, or alternatively there is a genuine fact issue with respect to this question. Defendants concede that they spent less than three percent (3%) of gross sales for the four things which plaintiff agreed to be advertising (i. e., radio, television, newspaper, and circulars), but contend that they spent more than three percent (3%) for "advertising purposes" if that term be taken to include displays, signs in the window and on the building, posters, preparation of local ads, and·an allocated share of the expense of the sales promotion department of defendant Murphy. Defendants say that the problem presented to this court is whether "advertising purposes" as used in the lease can, as a matter of law, be said to exclude sums for these additional expenses (i. e. sign painters, window trimmers, wages for preparing advertising copy, sums spent by defendant for advertising and sales promotion campaigns, printing advertising signs, banners and posters). Plaintiff, on the other hand, contends that there is no ambiguity in the related provisions of the present lease contract (i. e. "advertising purposes"); that since the lease contract is plain, clear and unambiguous, it is incumbent upon the court, as a matter of law, to determine what the parties meant in the lease by assigning to these words ("advertising purposes") their ordinary popular and common accepted meaning: That is, that such expenditures included only payments for radio, television, newspapers and printed circulars.

This being a summary judgment case we must follow those certain rules laid down by the Supreme Court.

"* * * Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. Tigner v. First Nat'l Bank, 153 Tex. 69, 264 S.W.2d 85 (1954); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. Valley Stockyards Co. v. Kinsel, 369 S.W.2d 19 (Tex.Sup. 1963); Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954). * * * All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286 (1957); Smith v. Bolin, supra; Gulbenkian v. Penn, supra. Evidence which favors the movant's position is not considered unless it is uncontradicted. * * *"

See opinion by Justice Greenhill in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Supreme Court 1965). All of the material evidence must be considered by this Court along with the pleadings, depositions, admissions and affidavits on file, to determine whether the movant is entitled to a judgment as a matter of law. It is therefore the duty of this court to accept as true all of the evidence of the defendants who opposed the motion for summary judgment which tend to support their contentions, and give the defendants the benefit of every reasonable inference which properly can be drawn in favor of their position. 4 McDonald Texas Civil Practice, Sec. 17.26, p. 1394 and Gulbenkian v. Penn, supra.

 The contract of lease does not restrict "advertising purposes" to certain well defined expenditures. To the contrary it refers to the promotion of the business of lessee by advertising purposes and in this connection broadens the term of specific advertising further, to include "erecting and painting signs * * *." Had plaintiff limited the term advertising to "radio, television, newspaper and printed circulars", then expenditures for such purposes could have been readily ascertainable. The competitive nature of business, requires ingenuity and planning in announcing and making known the promotion of products to be sold. Therefore, in attempting to define the term advertising, it would have to be as broad as its ultimate purpose. This is borne out in cases cited to this court in attempting to define this term. In the case of State v. Guardian Foundation of Texas, Inc., 112 S.W.2d 806, Tex.Civ.App. 1938, the court said:

> "Modern advertising is conducted under a wide variety of methods, and its limitations are not readily nor precisely definable."

On a subsequent appeal of the same case in Tex.Civ.App., 128 S.W.2d 880, the court quoted with approval from the standard text used in the business administration course at the University of Texas:

> "According to one point of view, the purpose of advertising is to make a product known, but not to sell it. According to the second point of view, the purpose of advertising is not only to make the product known but also to sell or help sell it. * * *"

No specific definition of the term advertising has been accepted, even in advertising circles. The word advertising is used to explain a great many variations in the public promotion of business. See also Rust v. Missouri Dental Board, 155 S.W. 2d 80 at 83 (Missouri Supreme Court, 1941); Edward v. Lubbock County, 33 S. W.2d 482, Tex.Civ.App.1930. In any respect if there is any doubt as to the meaning of the language in a lease then the uncertainty would be resolved against the lessor to prevent a forfeiture. Hill v. Still, 19 Texas 76; 25 Tex.Jur.2d 504, Forfeitures, Sec. 4; Dedear v. Wilson, 220 S. W.2d 534, Tex.Civ.App.1949, wr. ref. See

also, 35 Tex.Jur.2d 504, Landlord and Tenant, Sec. 20, and cases there cited.

■ The evidence showed that defendant Murphy Company had a special department in its home office which was in charge of planning advertising campaigns. They planned advertising promotions and made promotional materials for stores belonging to Murphy and its affiliates, including the defendants' store. Murphy's advertising department made advertising materials, including suggested layouts, suggested radio and T.V. messages, newspaper cuts, circulars, banners, streamers and the like. The department employed artists, painters and advertising specialists. These materials and services were used by the defendants in their store. For instance, this Home Office Department spent $518,-138.00 in 1962. In an undisputed affidavit by the man in charge of this department, he stated that he was an advertising man and that all this work was for "advertising". A certain small proportion ($^{61}/_{100}$ of 1% for 1962) of the expense of Murphy was allocated to this store. Defendants' evidence was to the effect that this expense allocated to their store amounted to $3161.-00 in 1962 and $4118.00 in 1963, and was in addition to approximately $15,000.00 spent in 1962 and 1963 for items admitted by appellee as advertising expense. Other evidence from depositions and affidavits by the defendants showed that certain additional expenditures were made by the defendants by allocating a portion of the salaries of local store employees for painting signs, trimming windows, planning and directing the conduct of ads originating locally, and writing advertising copy. Additional allocations of a percentage of salary of the local manager and assistant manager were allocated to advertising, based upon estimates of time they spent in formulating advertising. All of this amounted to more than three percent (3%). Plaintiff excepts to this type of expenditures arguing that these sums were not expenditures made for advertising purposes. This raises a question of material fact to be presented to the jury. We believe that the term advertising as used in this lease is quite broad, and the jury should, after hearing all the evidence, determine the amount actually spent for "advertising purposes". Appellants' first and second points are sustained.

Appellants' third, fourth, fifth and sixth points are to the effect that even if defendants were in default, the plaintiff wrongfully declared an unconditional forfeiture of the lease on too short a notice; that even after notice there was no showing that they did not cure such supposed default in the shortest possible time; and that plaintiff waived his supposed right of forfeiture by continuing to collect the rentals and treating the lease as effective after the supposed default.

The forfeiture clause in this lease was almost identical to the one construed by the Supreme Court in Rohrt v. Kelley Manufacturing Co., supra, except for the time of default and notice for removing or curing the default. In the Rohrt case the lessee defaulted in his covenant to pay the monthly rental when due. Notice of such default was given by the lessor of his intention to declare the lease forfeited. Following the ten-day period (for curing such default) the lessor again advised the lessee that inasmuch as the lessee had not completely cured such default within ten days after such notice, the lease was at an end. The Supreme Court recognized, that since the petitioner failed to pay the delinquent rentals within the ten-day period after notice, coupled with the letter of notice, this resulted in a forfeiture of the lease at the end of the ten-day period.

■ Here, the plaintiff gave the defendants, not thirty, but twenty-five days notice of cancellation and forfeiture, and the notice was not contingent upon the defendants' curing such default within the time specified in the lease. Defendants allege, and this contention was supported by an affidavit, that after receipt of plaintiff's forfeiture letter on March 6, 1964,

they spent more than three percent (3%) of the gross sales on "direct" advertising costs. We hold that this raised an issue of a material fact.

■ The forfeiture provision provided that in the event of default of "any of the covenants" the plaintiff could have enforced the performance of the lease by any method provided by law (for instance a suit for damages). If after default the lessee had abandoned or vacated the premises, the plaintiff could have taken possession of the premises and re-let the same at the best rental obtainable and made the lessee account for any deficiency, if any. Rohrt v. Kelley Manufacturing Co., supra (which is applicable here). Or, alternatively, the lease provided that "in the event of default in any of the covenants herein," the lessor (plaintiff) could declare the lease forfeited, "if such default continue for a period of thirty days after lessor notifies lessee of such default and his intention to declare the lease forfeited," and "unless the lessee (defendants) shall have completely removed or cured said default" the lease shall come to an end. (Rohrt v. Kelley Manufacturing Co., supra). The plaintiff did not give the required number of days notice to effectuate a forfeiture. In any event the defendants were entitled to cure such default, according to the terms of the lease within thirty days after such notice. Their affidavit stating that they had done so, raises a fact issue on this question preventing the proper entry of a summary judgment.

■ In the case of Anderson v. Poulos, 197 S.W.2d 521, Tex.Civ.App.1946, n. r. e., a covenant in the lease required the lessee to furnish free meals to the hotel manager and to give other hotel employees a forty percent discount. In addition, lessee was to furnish a bond conditioned upon his performance of the covenants in the lease. The lease provided for forfeiture on default if "such default continue for a period of ten days after lessor notifies said lessee of such default and his intention to declare

the lease forfeited, * * *." The lessor gave the requisite notice whereupon the lessee began to furnish the meals and gave the discount, but did not give the surety bond within the ten-day period. The court said in an opinion by Justice Norvell, that:

"* * * [under the] provisions of the lease, default in the performance of a covenant in itself does not mature the right of forfeiture. In addition to default, there must be notice thereof, and failure to correct such default within ten days' time. * * *"

See also Harris v. Ware, 93 S.W.2d 598, 600, Tex.Civ.App.1936, wr. ref. An option to rescind must be exercised in strict accordance with its terms, to be effective. Vidor v. Peacock, 145 S.W. 672, Tex.Civ. App.1912.

■ The courts do not favor forfeitures and unless compelled to do so by language that will admit to no other construction, forfeiture will not be enforced. The law abhors a forfeiture. Sirtex Oil Industries, Inc. v. Thelma Erigan, et al., 9 Sup.Ct. Journal, No. 33, p. 439, at 441, and cases cited therein; Dilbeck v. Gaynier, 368 S.W.2d 804, Tex.Civ.App.1963, n. r. e.; see also Decker v. Kirlicks, 110 Tex. 90, 216 S.W. 385–386; Johnson v. Gurley, 52 Tex. 222 (1879); 36 Tex.Jur.2d, Landlord and Tenant, Sec. 253, p. 103–105. Appellee, in his reply point number 2, says:

"As a matter of law and *equity*, the lease contract has been terminated, and Appellee is entitled to possession of his property under the undisputed circumstances presented by the present record." (emphasis supplied)

Equitable relief will not be granted in declaring a forfeiture, for only the plain language of the contract will permit such drastic relief. The record indicates to us that the lessor knew or was complaining about the alleged default of the lessee in failing to expend three percent (3%) for advertising purposes as far back as 1961. The record is clear and undisputed that the

lessee made the requisite monthly rental payments, not only for the minimum amount expressed under the lease, but for additional sums calculated on three percent (3%) of the gross sales. These payments were accepted by the lessor each month, presumably with knowledge of the purported default of the advertising covenant in the lease. Generally, a cause for the forfeiture of a lease or a right on the part of the landowner to re-enter the demised premises for a breach of a covenant or a condition may be waived. In 109 A.L.R., 1267, Annotation "Landlord's acceptance of rent as waiver of right to forfeit because of tenant's past or future violation of terms of lease", it is said at page 1269, III:

"Upon the theory that the occurrence of a cause of forfeiture gives the lessor an election to declare the lease at an end or to overlook the breach and allow the lease to remain in force, it is generally held that the acceptance of rent which accrues after a breach of a covenant or condition of a lease, with knowledge of such breach, constitutes a waiver of the right to forfeit the lease on account of such breach." Citing cases.

As stated in 32 Am.Jur., p. 747, Landlord and Tenant, Sec. 882:

"Generally speaking, any recognition by a lessor of a tenancy as subsisting after a right of entry has accrued, where the lessor has notice of the forfeiture, will have the effect of a waiver of the landlord's right to a forfeiture of the leasehold. Slight acts on the part of a lessor may be sufficient. Indeed, it has been ruled that any act on the part of the lessor, by word or deed, with knowledge of what has been done, which signifies his intention to affirm the lease, is conclusive evidence of a waiver of the forfeiture. A lessor who consents to acts of the lessee which otherwise would constitute ground for a forfeiture will not be permitted to enforce a forfeiture, because there is in such a case no breach by the lessee; * * *

"Whether there has been a waiver of the right of re-entry for breach of condition is ordinarily one of fact."

In 51 C.J.S. Landlord and Tenant § 117 page 705, Acceptance of Rent Accruing After Breach, it is said:

" * * * the acceptance by a landlord of rent which accrues after the breach of a condition contained in the lease generally implies a waiver of the right to declare a forfeiture of the lease and re-enter because of such breach, whatever may be the ground of forfeiture * *."

Citing Texas cases as follows: Anderson v. Poulos, supra; Harris v. Ware, infra; Theophilakos v. Costello, infra; Nardis Sportswear v. Simmons, infra. In Anderson v. Poulos, supra, the Court said:

" * * * The appellant by accepting rents either in the form of money (10 percent of the daily gross receipts) or in the form of meals furnished free to appellant's agent, the hotel manager, *treated the contract as a subsisting agreement and thereby waived the right of forfeiture* which matured under the provisions of the contract by reason of appellee's failure to deliver a surety bond within ten days after the notice of October 2, 1945." Citing cases.

" * * * (Lessor) *treated the lease as subsisting, accepting benefits thereunder and thus waived his right of forfeiture.*" (emphasis supplied).

See Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566, 570 (Supreme Court 1949) and cited cases; Gaddy v. Rich, 59 S.W.2d 921, Tex.Civ.App. 1933.

█ If there had been a breach of the covenant to expend the necessary funds for advertising, the lessor may have waived his right to declare the lease forfeited by his continued acceptance of the rental payments. At least under the record before us there is sufficient evidence that raises a

**860**

material issue of fact as to waiver. Anderson v. Poulos, supra, and cases cited therein; Blackburn v. Manning, 307 S.W.2d 347, Tex.Civ.App.1957; Barton v. Flanagan, 25 S.W.2d 947, Tex.Civ.App.1930, err. dism.; Theophilakos v. Costello, 54 S.W.2d 203, Tex.Civ.App.1932; Nardis Sportswear v. Simmons, 147 Tex. 608, 218 S.W.2d 451, 219 S.W.2d 779 (reformed on different point) (Supreme Court 1949); Harris v. Ware, 93 S.W.2d 598, Tex.Civ.App.1936. Appellants' points are sustained.

Judgment of the trial court is reversed and remanded for trial.