**Roy E. MILLER, Jr., Appellant,**

v.

**A. & N. R. RAILROAD COMPANY,
Appellee.**

**No. 7295.**

Court of Civil Appeals of Texas,
Beaumont.

Jan. 27, 1972.

Rehearing Denied Feb. 24, 1972.

Dies & Dies, Lufkin, W. James Kronzer, Houston, for appellant.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, Lufkin, for appellee.

STEPHENSON, Justice.

This is an appeal from an order granting defendant's motion for summary judgment. The parties will be referred to here by their last names and as "The Railroad."

Roy E. Miller, Jr., sued Angelina & Neches River Railroad Company and E. L. Kurth, Jr., for breach of a written employment contract. Such contract reads as follows:

"STATE OF TEXAS

COUNTY OF ANGELINA

"KNOW ALL MEN BY THESE PRESENTS THAT: This employment agreement is made this 1st June day of (June), 1965, by and between Angelina and Neches River Railroad Company, its executors, administrators, heirs, successors or assigns, hereinafter referred to as Railroad, and Roy E. Miller, Jr., hereinafter referred to as Employee.

"Whereas said Employee has demonstrated satisfactorily his ability to perform the duties and responsibilities of Vice President and General Manager of the Railroad since January 30, 1965, Railroad now desires to enter contract with Employee, for a period of twelve (12) years from date of this instrument, to continue to perform said duties under terms and conditions herein contained.

"Employee agrees to discharge the normal duties of General Manager in behalf of Railroad, and Railroad agrees

to pay to Employee at Lufkin, Angelina County, Texas, a basic salary in the amount of Twelve Hundred Dollars ($1200.00) per month plus necessary business expenses and in addition to other salaries and expenses as approved from time to time by the Board of Directors of the Railroad for services rendered as a Director and Vice President. It is understood and agreed by both parties hereto that the said monthly compensation to Employee of Twelve Hundred Dollars ($1200.00) shall be the minimum compensation during the term of this agreement.

"It is further agreed by both parties that Employee shall be eligible for all normal employee benefits, insurance, pensions, and vacations as additives to the basic compensations provided herein. In event of Railroad sale, merger acquisition or any other employment cessation condition, the terms and conditions of this agreement shall prevail in favor of Employee.

"Railroad further agrees, in the event of Employee's demise during the life of this agreement, to pay to Employee's widow or other legal beneficiary the sum of Six Hundred Dollars ($600.00) per month. for duration of this agreement, such amount to be in addition to insurance, pensions or other legal benefits.

"IN WITNESS WHEREOF, the parties concerned hereto have set their hand the date herein named, at Lufkin, Angelina County, Texas.

/s/ "Roy E. Miller, Jr.
        Roy E. Miller, Jr.
        Employee

/s/ "E. L. Kurth, Jr.
        E. L. Kurth, Jr., President
        Angelina and Neches River
        Railroad

/s/ "Glyndon L. Shives
        Witness"

———◆———

Miller has two primary points of error. First, that Kurth, as President, had the authority to execute this contract and bind The Railroad. Secondly, that the Board of Directors of The Railroad ratified and acquiesced in such contract. These theories of recovery being stated in Miller's pleadings, The Railroad and Kurth had the onerous burden on the motion for summary judgment of establishing as a matter of law that there was no genuine issue of fact as to any of the essential elements of Miller's cause of action. Gibbs v. General Motors Corporation, 450 S.W.2d 827, 828 (Tex.Sup.1970). The rules governing our consideration of this case are now well settled. We quote from Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93, 94 (1954):

"In determining the question of whether or not material issues of fact were raised by the evidence, the court must, under the law, first view all the evidence in the light most favorable to the petitioners; disregard the conflicts in the testimony; and indulge, in favor of the petitioners, every intendment reasonably deducible from the evidence. White v. White, 141 Tex. 328, 172 S.W.2d 295; Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256."

Also, we must assume here for the purposes of this appeal that Miller's discharge was not for good cause. Pioneer Specialties Inc. v. Nelson, 161 Tex. 244, 339 S.W.2d 199, 201 (1960).

We consider first Miller's contention that Kurth, as President, had the authority to execute this contract and bind The Railroad and that the approval or confirmation by the Board of Directors was not necessary. Miller's deposition, which was considered by the trial court, showed the fol-

lowing: That Miller came to work for The Railroad in June 1964 to be trained as a replacement for Sid Scott. Mr. Scott was then the General Manager, and Vice President, but was ill and planned to retire. Mr. Scott retired in January 1965 and on January 18, 1965, Miller was appointed acting General Manager and Vice President by Kurth. That Miller and Kurth discussed the preparation of an employment contract for some days before its preparation. That Miller had the contract prepared and took it to Kurth. That Kurth read the contract, inserted the date, June 1, 1965, called in Glyndon Shives, signed three copies of the contract, and asked her to witness them. That Miller left one copy with Kurth, took one copy to The Railroad files, and retained the original. That The Railroad copy was placed in the personnel file—a fireproof cabinet located in his office. Kurth's deposition and affidavit, which were considered by the trial court, showed the following: That he signed the contract as President of The Railroad and one copy was left with him.

Certain pertinent portions of the Texas Business Corporation Act, V.A.T.S., read as follows:

"Art. 2.02. General Powers

"A. Subject to the provisions of Sections B and C of this Article, each corporation shall have the power:

\* \* \* \* \* \*

"(12) To elect or appoint officers and agents of the corporation for such period of time as the corporation may determine, and define their duties and fix their compensation.

"(13) To make and alter bylaws, not inconsistent with its articles of incorporation or with the laws of this State, for the administration and regulation of the affairs of the corporation."

"Art. 2.23. Bylaws

"A. . . . The bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation."

"Art. 2.31. Board of Directors

"A. The business and affairs of a corporation shall be managed by a board of directors. Directors need not be residents of this State or shareholders of the corporation unless the articles of incorporation or bylaws so require. The articles of incorporation or bylaws may prescribe other qualifications for directors."

"Art. 2.42. Officers

"A. The officers of a corporation shall consist of a president, one or more vice-presidents as may be prescribed by the bylaws, a secretary, and a treasurer, each of whom shall be elected by the board of directors at such time and in such manner as may be prescribed by the bylaws. Such other officers and assistant officers and agents as may be deemed necessary may be elected or appointed by the board of directors or chosen in such other manner as may be prescribed by the bylaws."

"Art. 2.43. Removal of Officers

"A. Any officer or agent or member of the executive committee elected or appointed by the board of directors may be removed by the board of directors whenever in its judgment the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not of itself create contract rights."

The Bylaws of The Railroad contain this provision:

"*Article 4, Section 2*

"There shall be a General Manager appointed by the President, also a Traffic Manager, Auditor and General Attorney who shall be appointed by the

General Manager of this corporation and approved by the President."

■ The Railroad contends at the very outset that an employment contract for a term longer than one year could not be made with Miller even though confirmed by the Board of Directors because such a contract is contrary to public policy. The cases, Denton Milling Co. v. Blewett, 254 S.W. 236, 238 (Tex.Civ.App., Texarkana, 1923, error ref., 114 Tex. 582, 278 S.W. 1114); Leak v. Halaby Galleries, 49 S.W. 2d 858, 860 (Tex.Civ.App., Dallas, 1932, no writ); and Leon Farms Corp. v. Beeman, 240 S.W.2d 433, 437 (Tex.Civ.App., El Paso, 1951, error ref. n. r. e.), are cited in support of such contention. Without question, the law in this state was as contended by The Railroad until the amendment to Article 1327, Vernon's Ann.Civ.St., in 1951, followed by the adoption of the Texas Business Corporation Act in 1955. Since those dates, we think it is clear that a corporation is authorized under the law to enter into a contract extending beyond one year, even though the terms of office for a director and the officers is limited to one year. Little v. Employers Security Life Ins. Co., 343 S.W.2d 517, 521 (Tex.Civ. App., Dallas, 1961, error ref. n. r. e.). See also Brown v. Grayson Enterprises, Inc., 401 S.W.2d 653, 656 (Tex.Civ.App., Dallas, 1966, error ref., n. r. e.) and Dixie Glass Co. v. Pollak, 341 S.W.2d 530, 535 (Tex. Civ.App., Houston, 1960, error ref., n. r. e., 162 Tex. 440, 347 S.W.2d 596). Pioneer Specialties v. Nelson, supra (339 S.W.2d at p. 200), is cited to us by both sides in this appeal. We construe that opinion to mean nothing more than holding a provision in the corporation bylaws that the president should be elected for one year prohibits his employment as president for more than one year. The dissenting opinion written by Justice Walker, which also agrees with the foregoing holding, makes it crystal clear that a contract could have been entered into with Nelson as general manager for a term exceeding one year.

■ It is apparent from reading the provisions of the Texas Business Corporation Act set out above that a corporation may provide by its bylaws for the election *or appointment* of such officers or agents as such corporation deems necessary. It is also apparent that the bylaws of this Railroad provided for the appointment of a General Manager by the President. These bylaws make no provision for ratification or confirmation of such appointment by the Board of Directors. The Railroad argues in their case that there is a difference between the power *to appoint* a General Manager and the power *to contract* with the General Manager. We are convinced The Railroad did establish as a matter of law that its Board of Directors did not confirm the contract in question. We therefore arrive at the next question, a question of law: Was confirmation of such contract required by the bylaws of this corporation or the law of the State of Texas?

We have concluded that a logical construction of the bylaws of this corporation and the quoted provisions of the Texas Business Corporation Act authorized the President, under ordinary circumstances, to enter into an employment contract with a General Manager. The bylaws specifically provide for a General Manager to be appointed by the President. By adopting such bylaws with this specific provision, the Board of Directors delegated to the President the power to perform the specific act of appointment of a General Manager. There is nothing in the law of this state which would prohibit such delegation of authority. See San Antonio Joint Stock Land Bank v. Taylor, 129 Tex. 335, 105 S.W.2d 650, 654 (1937), for this statement of the law:

"In Thompson on Corporations (3d Ed.) p. 758, § 1300, the general rule relating to the powers of boards of directors of corporations to delegate certain authority to subordinate officers or agents, which seems to be supported by

the weight of authority, is announced as follows:

> " 'It has been held, therefore, that they have authority, acting as and for the corporation, to delegate to subordinate officers or agents, or to a committee of their own number, the power to perform any act, in the course of the business of the corporation, which they themselves can legally perform, although the performance of the act may involve the exercise of the highest judgment and discretion.'
>
> "The rule is generally accepted that the president of a corporation may be intrusted by the board of directors with the management of the business of such corporation, and he may perform for the corporation the business it is authorized to transact. 10 Tex.Jur. § 322, pp. 979, 980; 14a C.J. § 1858, pp. 93, 94."

Such bylaws do not provide for confirmation by the Board of Directors of such appointment. If the President is to be free to make such appointment, he necessarily must have the authority to contract for the General Manager's employment. A provision for appointment would be meaningless without the authority to determine the terms of employment. The bylaws are also silent as to giving the Board of Directors any control over the terms of employment of a General Manager. We have not been cited a single case directly in point, nor have we been able to find one.

We hold, solely for the purpose of disposing of this appeal of the summary judgment granted, that The Railroad did not establish as a matter of law that Kurth did not have the authority to execute the employment contract with Miller which was binding upon The Railroad, even in the absence of confirmation by the Board of Directors. This was a mixed question of law and fact. Miller had been elected to the Board of Directors in May 1965, which preceded the date of the contract in question. Certain questions of fact arise when a contract is made between a corporation and one of its directors in the determination of whether or not such contract is binding. See Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949, 951 (1935); Tenison v. Patton, 95 Tex. 284, 67 S.W. 92 (1902); McLendon Hardware Co. v. Black, 264 S.W. 1011, 1014 (Tex.Civ.App., Austin, 1924, no writ); Bayou Drilling Co. of Texas v. Baillio, 312 S.W.2d 705, 710 (Tex.Civ.App., Houston, 1958, error ref. n. r. e.); Western Inn Corporation v. Heyl, 452 S.W.2d 752, 758 (Tex.Civ. App., Fort Worth, 1970, error ref. n. r. e.); and Nelms v. A & A Liquor Stores, Inc., 445 S.W.2d 256, 259 (Tex.Civ.App., Eastland, 1969, error ref. n. r. e.).

We next consider ratification and acquiescence. It is conceded: The Railroad, the movant in this case, had the burden of proving, as a matter of law, the absence of ratification and acquiescence. The only evidence we have in this record as to these matters comes from the depositions and affidavits of Kurth and Miller. Their depositions showed that neither Kurth nor Miller mentioned the contract in question to any member of the Board of Directors and that such contract was not discussed at a Board meeting until October 15, 1968. If we were reviewing a trial on the merits with the burden of proof on Miller, undoubtedly the evidence would support negative findings as to ratification and acquiescence; but such is not the case. This evidence did not show as a matter of law that the other members of the Board of Directors did not know of the existence of such contract from the date of its execution. For example, the evidence shows McDermott, the auditor, had access to the files in which this contract was kept but there is no proof that McDermott did not find this contract and discuss it with all of the other members of the Board of Directors. The Railroad failed to discharge its burden. For the reasons herein mentioned, the cause is reversed and remanded.

Reversed and remanded.

DIES, C. J., not participating.